# Westchester Fire Insurance Company of New York v. Wilson.

(Decided May 10, 1927.)

## Appeal from Grant Circuit Court.

1. Insurance.—Acts of agents, having full authority to collect and receipt for premium, accept application, approve risk, and issue and deliver fire insurance policy, in incorporating conditions, based on facts known to them, which will render policy void from beginning, are acts of insurance company.

2. Insurance.—Insured, telling insurer's agent everything necessary to disclose facts that another policy was in force and that title was in insured and his wife jointly, was not required to examine policy for "other insurance" or "unconditional and sole ownership" clauses.

3. Reformation of Instruments.—Evidence held to authorize reformation of fire insurance policy by adding provision, omitted by mutual mistake, that policy was issued with knowledge of other insurance on property.

4. Insurance.—Insurer's issuance of fire policy with full knowledge that another policy on insured property was in force may be treated as waiver of provision invalidating policy, if insured has any other contract of insurance on property.

5. Reformation of Instruments.—Evidence held to warrant reformation of fire insurance policy, so as to insure both insured and his wife, on the ground that her name was omitted by mutual mistake.

6. Insurance.—Under evidence that insured's insurable interest in property destroyed by fire greatly exceeded total amount of his policy thereon and his half of previous policy issued to himself and wife, that he made no fraudulent misrepresentation or concealment, and that insurer through its agents, had full knowledge of his ownership of only half interest, court might properly have held that unconditional and sole ownership requirement was waived, and that policy was issued to cover insured's insurable interest.

7. Insurance.—Insurer, accepting premium and issuing and delivering fire policy containing conditions invalidating it if insured had other insurance or other interest than unconditional and sole ownership, with knowledge that another policy was in force and that insured owned only half interest in insured property held estopped to rely on such conditions.

8. Insurance.—Ky. Stats., section 762a-18, prohibiting insurance companies or agents from making contracts not plainly expressed in policy, does not prevent court of equity from reforming policy not expressing true contract because of mutual mistake, nor from holding that provisions of contract have been waived, or that insurer is estopped to rely thereon.

H. H. HUFFAKER and F. A. HARRISON for appellant.

C. C. ADAMS for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

This is an action by appellee, Joe Wilson, against appellant, Westchester Fire Insurance Company, to recover $2,000, the amount of an insurance policy issued by it and held by him, upon the ground that the dwelling house insured had been destroyed by fire and that he was entitled to recover under the policy. The questions hereinafter discussed were presented by appropriate pleadings, and appellee recovered judgment against appellant for the amount of the policy. Hence the appeal.

The questions presented may perhaps be most readily approached by a brief statement of the facts appearing.

In 1911, there was conveyed to appellee, Joe Wilson, and his wife, Viola Wilson, jointly, 237 acres of land in Grant county, Kentucky. He thereafter erected on this tract of land a large two-story brick veneer residence, which from the evidence, at the time it was burned, was worth from $6,000 to $8,000. On October 15, 1921, Frank B. Craig and V. R. Holbrook, partners, doing business under the name of Craig & Holbrook, were the agents of appellant insurance company, with full authority from it to solicit, receive, and approve applications for and to issue and deliver policies of fire insurance in its name and for it in Grant county, Kentucky. On that date they, so representing appellant, went to the home of appellee on his farm and solicited him to take insurance on his dwelling house with their company. He at first declined to do so, for the reason that there was then in force insurance to the amount of $2,000 in another company covering the house, and he disclosed the name of the company carrying that insurance. That fact is admitted by Craig, the only one of the two agents to testify herein.

Craig and Wilson were acquaintances and friends of long standing. Craig, as notary public, had taken the acknowledgment of the grantor to the deed whereby Wilson and his wife acquired title of the farm. Only 11 days before the occasion on which appellant's agents were thus soliciting insurance from Wilson, and occasioned by the fact that Wilson's wife had sued him for divorce, Wilson and Craig together had gone to the office of a lawyer to advise with him as to what steps should be taken by Wilson to protect himself. While there the deed

by which the title of the farm had been conveyed to Wilson and his wife jointly was read, and its effect discussed between the attorney and Wilson and Craig. Craig does not deny that this occurred, though he was unable to remember whether it was before or after the insurance policy was written. The testimony, however, beyond question establishes that it was only 11 days before that time.

Appellee, Wilson, testified that in the conversation between him and appellant's agents, in telling them of the $2,000 of insurance then in force, he stated that "we," referring to himself and his wife, have a policy for $2,000 covering the house, and that he made the information as to the state of the title no more explicit, because he knew that Craig had full knowledge as to it. Craig did not deny this testimony. He admitted that he made no inquiry of Wilson as to the state of the title, and that Wilson did not represent to them that he was the sole and unconditional owner of the farm and dwelling house located on it. Neither did he deny that he then knew the title was in Wilson and his wife. Appellant's agents met appellee's objection to additional insurance, by stating that he should have at least $6,000 more insurance on the dwelling house, as the policy in force did not protect him by at least that amount. The negotiations ended by appellee agreeing to take additional insurance to the amount of $3,000, $2,000 of which was to cover the dwelling house, and appellee paid the premium in cash for a three-year policy. Appellant's agents returned to their office and issued the policy.

The policy issued provided that it should be void "if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstances concerning this insurance or the subject thereof, or if the interest of the insured in the property be not truly stated herein," or "unless otherwise provided by agreement indorsed hereon or added hereto, if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy," or "if the interest of the insured be other than unconditional and sole ownership." No rider was attached to the policy, noting the fact and agreeing that it was issued with knowledge and consent that other insurance to the amount of $2,000 covered the dwelling house, and it was issued in the name of Wilson alone.

Appellant insurance company relies upon the foregoing quoted conditions of the policy to defeat its collection, and counsel present their arguments to that end in 50 pages of printed brief. It does not seem to this court that appellant insurance company, on this occasion and in this transaction, undertook deliberately to defraud appellee, and to obtain from him the money he paid to them to carry this fire risk by false pretenses. If the contention for appellant should be sustained, under the facts appearing herein, it would be to hold that an insurance company may accept and keep the premium paid to it by an insured, and deliberately write into the policy for which the premium was paid conditions based upon facts it knows to exist, which will render the policy void from the beginning and utterly worthless to the insured. It must be remembered that in this case the agents representing appellant had full authority from it to collect and receipt for the premium, to accept the application, approve the risk, and issue and deliver the policy; in other words, the acts of the agents were the acts of the insurance company, since they had full authority to act for it.

Appellant solicited this contract of insurance. It was informed then that another policy insuring the dwelling house was in force. It does not deny that it then knew that the title was in appellee and his wife. Insured then appears to have said on that subject everything necessary to disclose the facts. Nothing hinting at fraudulent misrepresentation or concealment as to that upon the part of insured appears. He had the right to assume, because insurer agreed, under the conditions then within the knowledge of both of them, and for the premium which he paid, and which it accepted and kept, to pay $2,000 for the destruction of the dwelling house by fire while the contract was in force, that the policy of insurance would so provide, and prudence or diligence upon his part did not demand that he examine the policy to ascertain whether conditions based upon facts known by insured to exist had been written into it which rendered it void from the beginning.

In accordance with appellee's plea it was adjudged that the policy be reformed by adding a provision reciting the fact that it was issued with knowledge that other insurance to the amount of $2,000 covered the

dwelling house insured. The facts in evidence clearly authorized that to be done, as unquestionably from the evidence herein that provision was omitted from the policy by mutual mistake of the parties. The fact that appellant issued the policy sued on with full knowledge that the other insurance policy was in force might properly have been treated as a waiver of that provision of it.

The trial court declined to reform the policy, so as to make it insure appellee and his wife against loss. From the evidence herein the court is of the opinion that that might have been done properly, since, as we view it, the evidence conclusively establishes that such was the intention of the parties, and that her name as one of the insured was omitted from the policy by the mutual mistake of the parties. That at least would be the most charitable view to take so far as insurer is concerned.

The evidence establishes that appellee's insurable interest in the dwelling house destroyed by fire was much greater than the full amount of this policy and his half of the previous policy which had been issued in the name of himself and his wife. Under the facts here appearing, the court below might properly have held that, as insured made no fraudulent misrepresentation or concealment, and appellant, through its agents, then had full knowledge of the fact that he was the owner of only an undivided one-half interest in the dwelling house, the provision of the policy that it should be void in the event the interest of the insured was other than unconditional and sole ownership was waived, and that the policy was issued to cover appellee's insurable interest in the dwelling house.

The court held that appellant insurance company was estopped to rely upon the provisions of the insurance contract pleaded by it as avoiding liability. We conclude that the judgment in this particular is correct. Appellant had full knowledge that a contract of insurance insuring the dwelling house to the amount of $2,000 had been issued and was in force, and full knowledge that insured was the owner of only an undivided one-half interest therein. There is a total failure of proof of any statement or action upon the part of insured tending in the least to establish fraudulent misrepresentation or concealment upon his part as to the state of the title or otherwise in procuring the contract of insurance. Appellant accepted his money and insured and delivered to him

a contract of insurance which contained conditions that it knew rendered the policy void from the beginning; but it kept his money and led him to believe that he was protected against loss from fire by the insurance contract which it had issued to him.   It thereby created a perfect estoppel against its replying upon the conditions which it wrote into the policy under facts which it then knew to exist which made the policy void from the beginning.   The trial court properly held under the facts hereof that appellant is estopped from relying upon either the "other insurance" clause or the "sole and unconditional ownership" clause of the policy sued on.

Appellant insists that section 762a-18, Kentucky Statutes, reading, "No insurance company nor any agent thereof shall make any contract or agreement with reference to any insurance other than is plainly expressed in the policy," when properly construed and applied, makes the policy issued conclusive between the parties, and authorizes no deviation from its terms under any condition.   The statute in question cannot be given the broad application contended for by appellant.   Certainly nothing in the statute above would prevent a court of equity upon a proper showing from reforming an insurance contract in a case where by mutual mistake it did not express the true contract entered into by insurer and insured.   Neither would the provisions of the statute prevent the courts from holding in a proper state of case that one or more of the great number of provisions of an insurance contract have been waived by the parties to it, thereby eliminating such provisions, and yet leaving the contract of insurance plainly expressed in the policy. Clearly it was never intended by the statute above that an insurer might not, as in this case, estop itself to rely upon any number of the great many provisions of insurance contracts.   The statute certainly was never intended to enable an insurance company to practice frauds or to obtain money under false pretenses.

For the reasons indicated, the judgment herein is affirmed.

The whole court sitting.